\*NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| UGORJI O. UGORJI, : <br> : <br> Plaintiff, : <br> : <br> v. : <br> : <br> NEW JERSEY ENVIRONMENTAL : <br> INFRASTRUCTURE TRUST, *et al.*, : <br> : <br> Defendants. : | Civil Action No. 12-5426 (FLW) <br><br> **OPINION** |

**WOLFSON, United States District Judge:**

Before the Court is Defendant Frank Scangarella's ("Defendant" or "Scangarella") motion to dismiss Count Two of Plaintiff Ugorji O. Ugorji's ("Plaintiff" or "Ugorji") Second Amended Complaint ("SAC").[1] In this action brought under 42 U.S.C. § 1983, Plaintiff alleges that Defendant violated Plaintiff's constitutional equal protection rights by discriminating against Plaintiff, as well as creating a hostile work environment, based on Plaintiff's race. Defendant moves, pursuant to Fed. R. Civ. P. 12(b)(6), to dismiss Plaintiff's claim against him for failure to state a claim upon which relief can be granted. For the following reasons, the Court GRANTS Defendant's motion.

**I.    BACKGROUND**

The following facts are drawn from the SAC, and are assumed true for the purpose of Defendant's motion to dismiss; additional facts will be set forth as necessary.

---

[1]    Both parties are employed by the New Jersey Environmental Infrastructure Trust ("NJEIT"), the other named defendant in this matter.

1

Plaintiff is a United States citizen of African descent, who has worked at his current employer, NJEIT, since 1996.  SAC, ¶¶ 8, 11.  Plaintiff holds a doctorate degree in educational administration, which is a subset of public administration, and prior to his employment at NJEIT, Plaintiff had been employed by the New Jersey Department of Environmental Protection ("NJDEP") for several years.  *Id.* at ¶¶ 8-10, 21.  During Plaintiff's time at NJEIT, he has raised various complaints related to alleged discrimination at his employment.  In 2001, Plaintiff filed a complaint of discrimination against both NJEIT and NJDEP with the New Jersey Division of Civil Rights ("NJDCR"), which was settled in its entirety in 2006.  *Id.* at ¶ 13.  In 2008, Plaintiff filed a complaint in the United States District Court for the District of New Jersey against, *inter alia*, NJEIT and Scangarella alleging racial discrimination; in 2012, the district court judge granted summary judgment against Plaintiff on the 2008 complaint, which was affirmed by the Third Circuit the following year.  Additionally, during the pendency of that district court action, on May 16, 2012, Plaintiff filed a claim of discrimination and retaliation based on his race with the Equal Employment Opportunity Commission ("EEOC"), which could not determine if there had been any violation and subsequently issued a "right to sue" letter two weeks later.  *See* Def. Mot., Ex. F.[2]

In the SAC, Plaintiff alleges a variety of facts related to his racial discrimination claims against both Scangarella and the NJEIT that arose during 2011 and 2012; in this Opinion, I recount only those facts relevant to Scangarella.  Plaintiff alleges that on or about July 5, 2012, he received a letter from the New Jersey Ethics Commission informing him of an anonymous ethics complaint had been filed against him for "failure to disclose outside

---

[2]  Although Plaintiff does not include the EEOC letter or decision in his SAC, I can take judicial notice of its existence, which is properly considered in a motion to dismiss.  *See Sands v. McCormick*, 502 F.3d 263, 268 (3d. Cir. 2007).

2

activities and misuse of state resources." SAC, ¶ 17. Plaintiff contends that this ethics complaint was filed by, or caused to be filed by, Scangarella in retaliation for Plaintiff's filing of previous discrimination complaints against Scangarella and the NJEIT. *Id.* Notably, Plaintiff does not dispute whether there was a basis for the ethics complaint, but instead contends that "[o]ther employees, including managers such as Mr. Scangarella, have used State resources for private activities . . . ." *Id.* In another instance, Plaintiff alleges that Scangarella became upset when Plaintiff was the sole individual in the office, apparently in violation of an office policy prohibiting Plaintiff's co-workers from allowing Plaintiff to be alone in the office. *Id.* at ¶ 18. Plaintiff also received a written reprimand from Scangarella when Plaintiff failed to call Scangarella on his personal cell phone to inform him that Plaintiff would be late to work due to a doctor's appointment—a complaint that has never been withdrawn or addressed by a senior supervisor. *Id.* at ¶ 19. Lastly, Plaintiff alleges that Scangarella reprimanded Plaintiff when he overheard a personal phone call Plaintiff made at work, including by calling Plaintiff "uppity," which Plaintiff interpreted as a derogatory race-based comment; Plaintiff further alleges that he has been targeted for making personal calls and his use of hands-free headsets, notwithstanding the existence of no such general policy. *Id.* at ¶ 20.

On these facts and others, Plaintiff filed an Amended Complaint against Scangarella and the NJEIT on January 19, 2013. On November 12, 2013, Scangarella filed a motion to dismiss all counts of the Amended Complaint under Rule 12(b)(6). On November 25, 2013, Plaintiff filed his two-count SAC, in which Count One alleges a violation of Title VII of the Civil Rights Act of 1964 against NJEIT only, and Count Two alleges a violation of the Equal

Protection Clause of the Fourteenth Amendment against Scangarella only. Because Count Two remained substantially the same between the Amended Complaint and the SAC, the Court deemed it appropriate to permit the parties to proceed on Scangarella's previously filed motion to dismiss. Accordingly, on March 17, 2014, Plaintiff filed his opposition, and on April 8, 2014, Scangarella filed his reply.

## II.     STANDARD OF REVIEW

In reviewing a motion to dismiss on the pleadings, the court "accept[s] all factual allegations as true, construe[s] the complaint in the light most favorable to the plaintiff, and determine[s] whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cnty of Allegheny,* 515 F.3d 224, 233 (3d Cir. 2008) (citation and quotations omitted). As such, a motion to dismiss for failure to state a claim upon which relief can be granted does not attack the merits of the action but merely tests the legal sufficiency of the complaint. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (internal quotations omitted); *see also* Fed. R. Civ. P. 8(a)(2) ("[a] pleading that states a claim for relief . . . must contain a short and plain statement of the claim showing the pleader is entitled to relief"). In other words, to survive a Fed R. Civ. P. 12(b)(6) motion to dismiss for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570).

However, "the tenet that a court must accept as true all the allegations contained in the complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). Plaintiff need not meet any particular "probability requirement" but must show

that there is "more than a sheer possibility that the defendant has act unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556). Moreover, "context matters in notice pleading" and a complaint will fail to state a claim if the "factual detail in the claim is so underdeveloped that it does not provide a defendant with the type of notice of a claim which is contemplated by Rule 8." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 232 (3d Cir. 2008).

When presented with a motion to dismiss, the court should engage in a two-part analysis. *Fowler*, 578 F.3d at 210. First, the court must separate the factual and legal elements of each claim. *Id.* It "must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions." *Id.* at 210-11 (citing *Iqbal*, 556 U.S. at 667). Second, the court must determine whether the facts alleged are "sufficient to show that the plaintiff has 'a plausible claim for relief.'" *Id.* at 211 (quoting *Iqbal*, 556 U.S. at 679). The plausibility determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. In other words, for the plaintiff to prevail, the "complaint must do more than allege the plaintiff's entitlement to relief;" it must "'show' such an entitlement with its facts." *Fowler*, 578 F.3d at 211 (citing *Phillips*, 515 F.3d at 234-35).

The Third Circuit cautioned, however, that *Twombly* and *Iqbal* "do not provide a panacea for defendants," rather, "they merely require that plaintiff raise a 'plausible claim for relief.'" *Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 118 (3d Cir. March 14, 2013) (quoting Iqbal, 556 U.S. at 679). Thus, factual allegations must be more than speculative, but the pleading standard "is not akin to a 'probability requirement.'" *Id.* (quoting *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 556).

5

## III.   DISCUSSION

Scangarella moves under Rule 12(b)(6) to dismiss Count Two of the SAC, arguing primarily that Plaintiff's hostile work environment claim is not cognizable as a violation of the Fourteenth Amendment under § 1983.  Plaintiff in opposition contends that there is no limitation on the type of race discrimination that is contemplated under the Fourteenth Amendment equal protection clause, and thus he has adequately stated a claim sufficient to survive Scangarella's motion.

In Count Two of the SAC, Plaintiff alleges that "Scangarella intentionally denied Dr. Ugorji the same rights and protections guaranteed by the United States Constitution . . . as enjoyed by white co-workers."  SAC, ¶ 30.  Specifically, Plaintiff contends that "Scangarella singled out Dr. Ugorji for offensive and humiliating conduct treatment, intimidation, and denial of appropriate assignments and titles, while employees . . . not members of plaintiff's protected class were given promotions and not harassed or disciplined for the same actions."  *Id.* at ¶ 31.  In that connection, Plaintiff alleges in Count Two that "Scangarella is the Chief Operating Officer and Assistant Director of the NJEIT" and "and at all relevant times had the authority to evaluate the work performance of Dr. Ugorji and to promote him."  *Id.* Elsewhere in the SAC, Scangarella is alleged to be, at relevant times, "the ethics officer of the NJEIT and who was also Dr. Ugorji's immediate supervisor."  *Id.* at ¶ 17; *see also id.* at ¶ 6 ("Scangarella is the Chief Operating Officer of the NJEIT who was recently promoted to Assistant Director of the agency.  Also, he is the Affirmative Action Officer (AA) and Ethics Officer of the NJEIT.  He was the immediate supervisor of Ugorji and has occupied that position from January 27 2007 to September 2012.").  Reviewing the entire SAC, and

drawing inferences in Plaintiff's favor, for purposes of this motion I find that Plaintiff alleges that Scangarella is Plaintiff's direct supervisor, who had the authority to promote Plaintiff or, at a minimum, directly influence the NJEIT's decision to promote Plaintiff.  *See, e.g.*, *id.* at ¶ 33 ("There is a direct nexus between plaintiff's complaints regarding the NJEIT's denial of Dr. Ugorji's request for promotion . . . and the abusive and humiliating actions of Mr. Scangarella . . . .").  In sum, the SAC and Plaintiff's brief make clear that Plaintiffs claims against Scangarella arise from his alleged discriminatory treatment of Plaintiff as his supervisor.

A race-based hostile work environment claim is typically brought under Title VII of the of the Civil Rights Act of 1964.  *See* 42 U.S.C. § 2000e-2(a); *see also Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (explaining that Title VII encompasses discrimination claims arising out of "requiring people to work in a discriminatorily hostile or abusive environment"); *Hargrave v. Cnty. of Atl.*, 262 F. Supp. 2d 393, 411 (D.N.J. 2003) ("[I]t is by now well-established that a plaintiff can demonstrate a violation of Title VII through proof that racial harassment or unwelcome sexual conduct or comments have unreasonably interfered with his or her job performance or led to the creation of an intimidating, hostile, or abusive work environment.").  However, and contrary to Scangarella's contention, the Third Circuit and other Courts of Appeal additionally recognize that where a plaintiff alleges conduct violative of rights secured by both the Constitution and Title VII, the plaintiff may pursue his or her claim under either 42 U.S.C. § 1983, Title VII, or both.  *Hargrave v. Cnty. of Atl.*, 262 F. Supp. 2d 393, 440-42 (D.N.J. 2003) (collecting cases); *see, e.g.*, *Bradley v. Pittsburgh Board of Education,* 913 F.2d 1064, 1078-79 (3d Cir. 1990) (recognizing that plaintiff could pursue both Title VII and § 1983 equal protection claim for alleged race discrimination by employer); *Pollock v. City of*

*Philadelphia*, Civ. No. 06-4089, 2008 WL 3457043, at *8 (E.D. Pa. Aug. 8, 2008) *aff'd on other grounds sub nom. Pollock v. The City of Philadelphia*, 403 F. App'x 664 (3d Cir. 2010); *see also Polson v. Davis*, 895 F.2d 705, 710 (11th Cir. 1990) (holding that "a plaintiff may base a section 1983 claim on actions proscribed by Title VII where those actions also violate the United States Constitution").  In that connection, and although not explicitly ruled on by the Third Circuit, numerous courts in and out of this Circuit have concluded that a plaintiff "may prove an equal protection claim by establishing that he or she was subjected to a hostile work environment."  *Pollock v. City of Philadelphia*, 2008 WL 3457043, at *8-*9 (collecting cases).  I find the *Pollock* Court's decision to be thorough and well-reasoned, and in line with the weight of authority on this issue.[3]  Accordingly, I find that a hostile work environment claim premised on race-based discrimination may be brought as an equal protection claim under § 1983.

Plaintiff's hostile work environment claim must nevertheless satisfy the requirements for any other equal protection claim.  "'To bring a successful claim under 42 U.S.C. § 1983 for a denial of equal protection, plaintiffs must prove the existence of purposeful discrimination. . . . They must demonstrate that they received different treatment from that received by other individuals similarly situated.'"  *Chambers ex rel. Chambers v. Sch. Dist. Of Philadelphia Bd Of Educ.*, 587 F.3d 176, 196 (3d Cir. 2009) (Citation omitted.) (Quoting *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1478 (3d Cir. 1990)); *Pollock v. City of Philadelphia*, 2008 WL 3457043, at *9.  Here, this standard requires Plaintiff to be able to prove that Scangarella intentionally discriminated against Plaintiff because of his race, either personally or with actual knowledge of and acquiescence to the discriminatory behavior of others.  *Peace-Wickham v.*

---

[3]  Indeed, Scangarella has failed to identify any case holding to the contrary.

*Walls*, 409 F. App'x 512, 525 (3d Cir. 2010) (citing *Andrews v. City of Philadelphia*, 895 F.2d at 1478 and *Baker v. Monroe Twp.,* 50 F.3d 1186, 1194 (3d Cir. 1995)).  Within this framework, Plaintiff may advance a hostile work environment claim under the Fourteenth Amendment. *Pollock v. City of Philadelphia*, 2008 WL 3457043, at *9 ("[D]istrict courts in this circuit have utilized Title VII's hostile work environment framework in the context of discrimination claims brought under the Equal Protection Clause.").

In order to prove a hostile work environment claim against an individual defendant, a plaintiff must show: (1) that he or she suffered intentional discrimination because of race; (2) the discrimination was severe or pervasive; (3) the discrimination detrimentally affected the plaintiff; (4) the discrimination would detrimentally affect a reasonable person of the same race in that position; and (5) a basis for personal liability, *e.g.*, *respondeat superior*.  See *Andrews v. Philadelphia,* 895 F.2d at 1482.  Taking as true the allegations in the SAC, and drawing all inferences in Plaintiff's favor, I conclude that Plaintiff has adequately stated a hostile work environment claim against Scangarella.

Plaintiff has alleged that he has been subject to intentional discrimination because of his race.  *See* SAC, ¶ 8 ("With national origin as Nigerian, Dr. Ugorji O. Ugorji is a U.S. citizen of African descent."); *id.* at ¶ 30 ("Defendants intentionally violated Dr. Ugoji's right to equal protection of the law based on race.").  Plaintiff has also alleged that the discrimination was severe, pervasive, and detrimentally affected Plaintiff.  *See, e.g.*, *id.* at ¶¶ 17-20 (noting several instances over a period of months where Scangarella allegedly discriminated against Plaintiff); *see also id.* at ¶ 31 (describing Scangarella's conduct as "hostile, humiliating and offensive"); *id.* ("[E]mployees of the NJEIT not members of plaintiff's protected class were given promotions

and not harassed or disciplined for the same actions . . . [for which] Mr. Scangarella filed an ethics complaint against Dr. Ugorji."). Such conduct, if true, would detrimentally affect a reasonable person of the same race—*i.e.*, it is certainly reasonable for another person of Plaintiff's race to be detrimentally affected by being singled out and disciplined for conduct when others of another race were not disciplined for the same conduct.[4] Finally, Plaintiff has alleged a basis for liability by alleging that Scangarella was his immediate supervisor who directly participated in the discriminatory conduct. *Peace-Wickham v. Walls*, 409 F. App'x at 525 ("Claims that a supervisor participated in alleged discriminatory behavior must be supported by evidence of personal involvement by the supervisor, or evidence that the supervisor possessed actual knowledge of the discriminatory behavior of others and acquiesced to their improper conduct." (Citing *Baker v. Monroe Twp.,* 50 F.3d at 1194)). Thus, on the basis of the allegations and reasonable inferences in Plaintiff's favor, I conclude that Plaintiff has pled sufficient facts supporting an equal protection violation, premised on a hostile work environment claim, sufficient to survive Scangarella's motion to dismiss.

Before concluding, I must address Scangarella's qualified immunity argument. In his moving papers, Scangarella initially argued that Plaintiff's claims must be dismissed because Scangarella is entitled to qualified immunity. As noted, following the filing of Scangarella's motion, Plaintiff filed the SAC, narrowing the claims asserted against Scangarella to the single equal protection violation. Scangarella elected to stand on his originally filed motion, to which Plaintiff filed opposition papers arguing, *inter alia*, that Scangarella had failed to demonstrate

---

[4] In that connection, I note that even if Plaintiff has no claim for his denial of promotions—because he cannot show that he was entitled to any such promotions as a matter of right, as Scangarella argues—he still has plead sufficient facts for an equal protection violation premised on the allegations that he was singled out and disciplined because of his race.

his entitlement to qualified immunity. In reply, Scangarella addressed Plaintiff's equal protection claim, but did not respond to Plaintiff's arguments on qualified immunity or otherwise indicate whether he was continuing to assert such a defense. However, because qualified immunity is a bar from litigation, as well as liability, and because it does not appear that Scangarella explicitly withdrew his defense, I address whether Plaintiff's equal protection claim against Scangarella must be dismissed on qualified immunity grounds.

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Bayer v. Monroe County Children & Youth Servs.*, 577 F.3d 186, 191 (3d Cir. 2009) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). In this case, Scangarella argues that qualified immunity attaches because Plaintiff has not pled any violation of a clearly established constitutional right. As noted above, Scangarella's reasoning is misplaced. In the employment context, the Third Circuit has noted that supervisors, such as Scangarella, objectively should know not to treat subordinates like Plaintiff differently because they are members of a protected class. *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990) (noting that "[t]he purpose [of qualified immunity] is to protect public officials from liability in situations involving extraordinary circumstances and where they neither knew nor objectively should have known the appropriate legal standard" (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 819 (1982)).[5] Accordingly, Scangarella has not shown his entitlement to the defense of qualified immunity for Plaintiff's equal protection claim.

---

[5] Moreover, in any event, I note that Scangarella's reliance on the qualified immunity defense is misplaced for an additional reason. Contrary to Scangarella's assertions, Plaintiff

11

**CONCLUSION**

In conclusion, Plaintiff has pled sufficient facts that plausibly support a claim of race-based workplace discrimination under the equal protection clause against Scangarella. Scangarella has not shown that he is entitled to the defense of qualified immunity. Accordingly, Scangarella's motion to dismiss is DENIED.

Date: June 19, 2014    /s/ Freda L. Wolfson
                       The Honorable Freda L. Wolfson
                       United States District Judge

---

is not bringing a due process challenge, alleging a deprivation of a property interest, or complaining about the correctness of his employer's business decisions. Instead, as explained above, Plaintiff claims that he was singled out by Scangarella for discriminatory treatment based on his race, and that Scangarella created a hostile work environment for Plaintiff. The right to be free from workplace discrimination based on race is analyzed under an equal protection, not due process, rubric, *see Elmore v. Cleary*, 399 F.3d 279, 282 (3d Cir. 2005), and, as noted above, is a right that is, objectively, clearly established. *Andrews v. City of Philadelphia*, 895 F.2d at 1480.